FANNY TAYLOR *v.* J. P. FRERET, Sheriff et al.

A. furnished and occupied a room in the house in which B. the lessee, resided. A. sold his furniture
to B., who did not remove it from the house. *Held:* the delivery was, in contemplation of law,
complete, notwithstanding the furniture remained in the same house.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.
Price, for plaintiff. *Durant & Hornor,* for defendant and appellant.

CAMPBELL, J. The defendant, *Fonda,* having obtained a judgment against
*James Garland,* issued execution thereon, and on the 10th December, 1851,
seized a lot of furniture in a house in St. John street, as the property of his
debtor.

Plaintiff.claiming the property as her own, under an act of sale *sous seing
privé,* from *W. R. Rogers,* dated December 5, 1851, enjoined the execution.

The defendant in his answer to the injunction, avers that the property in
fact, belongs to his debtor, *Garland;* that if plaintiff has possession of it, that
such possession was acquired by the fraudulent and simulated contrivances of
herself, her pretended vendor and *Garland,* to conceal it from the pursuit of
his creditors, and that the transfer relied on is a simulation, and gives neither
title or possession.

It is clearly shown that *Garland* purchased the furniture in 1851, but at
what precise time does not appear. It is further shown that after the purchase,
he placed it in the house in which it was seized, where his kept mistress then
resided, and which house was leased by *Rogers,* who also resided there. The
house appears to have been a brothel, and *Fanny Taylor,* who seems to have
been the proprietor of it since December 1, 1851, then resided there.

Plaintiff claims title as has been seen, from *Rogers,* who she alleges pur-
chased from *Garland,* and in support of her pretension, has exhibited two acts
of sale, under private signature, one from *Garland* to *Rogers,* dated May 1st
1851; the other from *Rogers* to herself, dated December 5, 1851.

The chief question for our consideration is, " was the sale from *Garland* to
*Rogers,* real?" The record contains no positive evidence of the payment of
the price, except the acknowledgment of its receipt in the act of sale; yet
facts are proven, which, notwithstanding the suspicious circumstances that sur-
round these transactions, bring us to the conclusion that the sale was real, and
made at the time of its date.-

*J. B. Hubbard,* a dealer in furniture, testifies that in May or June, 1851,
*Rogers* offered to sell him this furniture. *James H. Jones,* of the firm of *Flint
& Jones,* from whom *Garland* purchased the furniture, deposes that sometime
before *Garland* failed, *Rogers* called on him and asked if the firm had any
claims on the furniture which they had sold to *Garland.*

*R. K. Bonham,* who lived with *Rogers,* states that he saw the bill of sale
from *Garland* to *Rogers,* he thinks in June or July, 1851, but knows that at
that time *Rogers* had possession of the keys and paid the rent of the house in
which it was placed.

*E. W. Ivens,* states that knowing that *Rogers* had endorsed notes for *Garland,*
he advised him to do so no more, but secure himself, and that shortly after-
wards *Rogers* exhibited the bill of sale. This was before either *Rogers* or *Gar-
land* went to the north, which was in July.

<div style="margin-left:2em">TAYLOR
*v.*
FRERET.</div>

We are of opinion too, though the furniture remained in the same house after the sale, that a delivery was made, in contemplation of law. *Rogers* was lessee of the house, and resided in it. *Garland* and his kept mistress likewise occupied it. After *Garland's* departure for New York in July, it was occupied by *Smith*, the agent of *Rogers*.

It is in evidence, that the plantiff has been the occupant of the house in St. John street since the 1st December—that a short time before that date, she made large purchases of additional furniture, and that on the 5th of that month, she purchased from *Rogers* the furniture by him acquired from *Garland*, and was in possession of it at the time of the seizure complained of.

We concur in the conclusion to which the District Judge arrived, and therefore decree that the judgment by him rendered in favor of the plaintiff, be affirmed with costs in both courts.